IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

QUANTUSE JACE JOHNSON,

      Plaintiff,

v.

STAR FREIGHT, LLC;
MR. CHARLIE JOHNSON;
MR. BRENDAN SMITH; and
MS. LAURA REED,

      Defendants.

CIVIL ACTION FILE NO.

1:18-cv-575-WSD-JKL

## FINAL REPORT AND RECOMMENDATION

This case is before the Court on Defendants' motion to dismiss [Doc. 4]. For the reasons discussed below, it is **RECOMMENDED** that the motion be **GRANTED**, but that Johnson be given an opportunity to file an amended complaint.

## I.    Background

According to the complaint in this case, Plaintiff Quantuse Jace Johnson was formerly employed as a truck driver with Defendant Star Freight LLC. On July 8, 2017, a trailer containing yogurt that he was hauling disconnected from his truck

and was damaged.  [Doc. 1 at 7.[1]]  While the trailer was being towed away, he was "coerced" by his dispatcher/supervisor Defendant Brendan Smith and the president of Star Freight, Defendant Charlie Johnson, to continue to try to deliver the load. Plaintiff refused because he believed that the trailer was so badly damaged that it did not meet Federal Motor Safety Carrier Administration ("FMCSA") guidelines and would expose the public to danger, and that attempting to haul the load would put his license in jeopardy.  The refrigerated trailer's landing gear was broken and its fuel lines and fuel tank were "leaking profusely."  In response, Defendant Johnson told plaintiff that if he "wasn't (expletive) willing to attempt to deliver this load, that [he] was (expletive) part of the problem."  Defendant Smith also directed Plaintiff to unload the yogurt from the damaged trailer and onto another trailer, even though it was "humanly impossible" to do so.  Plaintiff refused, and went home.  [*Id.* at 7.]

Two days later, on July 10, 2017, as Plaintiff was preparing for an out-of-state delivery for Star Freight, Plaintiff learned from Defendant Smith that he had been placed on suspension effective immediately.  [Doc. 1 at 7-8.]  Plaintiff

---

[1] References to specific page numbers in this document are to the automatically-generated numbers in CM/ECF.

2

complied with the suspension.  [*Id.* at 8.]  Then, on July 11, Plaintiff noticed that his "settlement/pay was being withheld."  On the following day, July 12, he contacted the payroll department and learned that Defendant Laura Reed, Star Fleet's safety director/human resources director, "had made the request to withhold such funds."  [*Id.*]

Plaintiff telephoned Defendant Reed, who notified him of his termination of employment.  [Doc. 1 at 8.]  It appears that she also demanded that Plaintiff return his truck to Star Freight, which he had been leasing from the company.  According to Plaintiff, she "refused to relinquish the title to the truck that [Plaintiff] had labored for over the previous 4 years and countless hours of dedicated service to [Star Freight]."  [*Id.*]  Following his termination from employment, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), and on November 7, 2017, the EEOC issued a right to sue letter.  [Doc. 1 at 11.]

On February 6, 2018, Plaintiff, proceeding *pro se*, filed this action using the Court's *Pro Se* Employment Discrimination Complaint Form.  [*See* Doc. 1.]  On the first page of the form, he indicated that he was bringing this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*  [*Id.* at 1.]  Then, in

3

the portion of the form that instructs the plaintiff to identify the protected classification on which he was discriminated, Plaintiff selected "other" and specified that he believes he was discriminated against because he refused to perform a task that was unsafe under the Federal Motor Carrier Safety Administration rules.  [Doc. 1 at 6.]  In the narrative portion of the form, Plaintiff did not allege any facts to suggest that race, religion, gender, national origin, age, disability, or engaging in protected activity had anything to do with how his former employer and coworkers treated him.  Indeed, Plaintiff explicitly alleged that

> Per my stance and refusal of being subjected to an unsafe working environment, it is my sincere belief that the negatively persistent attitudes and dispositions of management is what brought to a head my termination of contracted employment.

[Doc. 1 at 8.]

On February 26, 2018, Defendants moved to dismiss the complaint for lack of subject matter jurisdiction.  [Doc. 4.]  Defendants argue that Plaintiff's exclusive remedy lies with the Unites States Department of Labor because he alleges that he was terminated solely for refusing to perform unsafe tasks under the Department of Labor's commercial motor vehicle safety regulations.  Defendants maintain that the Surface Transportation Assistance Act ("STAA") sets out an administrative procedure for aggrieved drivers of commercial motor vehicles like Plaintiff to

challenge adverse employment actions based on the employee's alleged refusal to operate a vehicle in violation of the pertinent regulations.  [Doc. 4-1 at 3-5 (citing 49 U.S.C. § 31105(a)).]  Thus, according to Defendants, this Court does not have subject matter jurisdiction over Plaintiff's claims.  [*Id.* at 5-6.]

In response, Plaintiff argues that this Court has subject matter jurisdiction over this case because the STAA gives the employee the option of filing a complaint with the Secretary of Labor or in court.  Specifically, Plaintiff cites 49 U.S.C. § 31105(b), which pertinently provides that an employee "***may*** file a complaint with the Secretary of Labor."  [Doc. 8 at 3-4.[2]]  Plaintiff reads this language as indicating Congress's intent to permit an employee to file a complaint with the Secretary of Labor and pursue relief administratively, or, in the alternative, bring an action in federal court.  [*Id.* at 4.]  Plaintiff further argues that the Court has diversity jurisdiction over the action.  [*Id.*]

Defendants have filed a reply, in which they reiterate that Plaintiff's sole remedy is through the Department of Labor.  [Doc. 9.]

_____

[2] References to specific page numbers in this document are to the automatically-generated numbers in CM/ECF.

## II.     Applicable Standard

A complaint should be dismissed under Rule 12(b)(1) only where the court lacks jurisdiction over the subject matter of the dispute.  Fed. R. Civ. P. 12(b)(1). Attacks on subject matter jurisdiction come in two forms: "facial attacks" and "factual attacks." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013).  "Facial attacks to subject matter jurisdiction require the court merely to look and see if the plaintiff's complaint has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for  the purposes of the motion."  *Id.* at 1335-36.  On a facial attack, a district court may properly consider extrinsic evidence, such as deposition testimony and affidavits, and make findings of fact.  *Id.*  The attack in this case is facial, as Defendants contend that Plaintiff has not pled facts indicating that he has exhausted his administrative remedies under the STAA.

## III.    Analysis

### A.     Federal Question Jurisdiction

As a threshold matter, the Court readily concludes that, even though Plaintiff indicated on the *pro se* complaint form that he is asserting a claim under Title VII, his claim does not involve alleged discrimination based on any protected class or retaliation for engaging in protected activity.  Rather, his sole basis for challenging

the circumstances of his termination is that Defendants unlawfully fired him after he refused to violate applicable federal motor carrier safety rules.  Thus, Title VII—the only federal statute Johnson relies on in the in the complaint—is wholly inapplicable to this case.

The issue before the Court, then, is whether it has subject matter jurisdiction to adjudicate Johnson's claim that Defendants unlawfully terminated him for refusing to operate a truck under unsafe conditions.  For the following reasons, the Court is constrained to conclude that Plaintiff was required to pursue his claim administratively before filing suit, and this Court lacks subject matter jurisdiction to adjudicate his STAA claim.

The STAA prohibits an employer from taking an adverse employment action against an employee in any way for refusing to operate a vehicle in violation of a federal rule or regulation.  49 U.S.C. § 31105(a)(1)(B); *see also Norman v. M.S. Carriers, Inc.*, 741 F. Supp. 148, 149 (W.D. Tenn. 1990).  The STAA goes on to specify a multi-step administrative process by which an aggrieved employee may seek relief.  First, the employee "may file a complaint with the Secretary of Labor not later than 180 days after the alleged violation occurred."  49 U.S.C. § 31105(b)(1).  Within 60 days after the filing of the complaint, the Secretary of

Labor conducts an investigation into the merits of the claim and issues a decision. *Id.* § 31105(b)(2)(A). If the parties do not file objections to the decision, it becomes the final order of the Secretary and is not subject to judicial review. *Id.* § 31105(b)(2)(B). If the parties timely object to the decision and request a hearing, the Secretary holds a hearing, and, within 120 days after the end of the hearing, issues a final order and becomes subject to judicial review in the federal court of appeals for the circuit in which the violation occurred or the employee resided on the date of the violation. *Id.* § 31105(b)(2)(C), 31105(d). Should the Secretary fail to issue a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee, the employee may bring an original action for de novo review in a federal district court. *Id.* § 31105(c).

As discussed above, Plaintiff's sole argument as to why this Court has subject matter jurisdiction over this case that he reads the STAA as giving an aggrieved employee a choice as whether to file suit in court or pursue administrative remedies. Specifically, he focuses on the word "may" in the following provision:

> An employee alleging discharge, discipline, or discrimination in violation of subsection (a) of [49 U.S.C. § 31105] . . . ***may*** file a complaint with the

> Secretary of Labor not later than 180 days after the
> alleged violation occurred.

49 U.S.C. § 31105(b)(1).  The Court cannot agree with Plaintiff's reading.

Plaintiff is correct that the term "may" often indicates that a particular action is permissive, rather than mandatory.  *See DIRECTV, Inc. v. Brown*, 371 F.3d 814, 817 (11th Cir. 2004) ("[T]he primary legal sense" of "may" is ordinarily "termed the 'permissive' or 'discretionary' sense.") (quoting Black's Law Dictionary 993 (Deluxe 7th ed. 1990)).  But this is not always the case.  As explained by the Eleventh Circuit:

> "Although 'may' could be read as permissive . . . the mere use of 'may' is not necessarily conclusive of congressional intent to provide for a permissive or discretionary authority."  *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S. 193, 198, 120 S.Ct. 1331, 146 L.Ed.2d 171 (2000). "The word 'may,' when used in a statute, usually implies some degree of discretion.  This common-sense principle of statutory construction is by no means invariable, however, and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute."  *United States v. Rodgers*, 461 U.S. 677, 706, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983); Black's Law Dictionary 993 ("In dozens of cases, courts have held may to be synonymous with shall or must, usually in an effort to effectuate legislative intent.").

*Id.*

As discussed above, the STAA sets out a detailed mechanism for aggrieved employees to seek relief under the STAA, and it describes the limited circumstances in which an employee may seek review of the agency action in the circuit court or file an original action in the district court.  The common-sense way to read the statute is that, by using the term "may," Congress intended to give an aggrieved person a choice as to whether or not to seek relief at all—not the forum in which to seek it.  Reading the language of § 31105(b)(1) this way is also consistent with decisions from Courts across the county that have uniformly held that the administrative requirements in the STAA are mandatory.  *See, e.g., Matthews v. Transp. Div., Inc.*, No. 3:16-cv-340-GNS, 2017 WL 7000278, at *5 (W.D. Ky. Mar. 10, 2017) (dismissing STAA claim where employee did not file complaint with Secretary of Labor); *Carr v. Thompson*, No. CV 2:15-1769-SB, 2015 WL 6408179, at *3 (D.S.C. Oct. 21, 2015) ("[T]he STAA requires that, before a Plaintiff can assert a claim for retaliation under that Act, they must first exhaust their administrative remedies by filing a complaint with the Secretary of Labor and completing that review process."), *adopted, id.* at *1; *Bailiff v. Davenport Transp., Inc.*, No. 3:13-cv-308-GCM, 2013 WL 6229150, at *3 (W.D.N.C. Dec. 2, 2013) (dismissing unexhausted claim for retaliation under the STAA for lack of subject

10

matter jurisdiction); *Rose v. Anderson Hay & Grain Co.*, No. cv-10-55-RMP, 2010 WL 3211948, at *1 (E.D. Wash. Aug. 6, 2010) (same and noting further that "Congress expressly granted initial jurisdiction to the Secretary of Labor, instead of to district courts"); *Hernandez v. Mohawk Indus., Inc.*, No. 6:08-CV-927ORL-28GJK, 2009 WL 3790369, at *5 (M.D. Fla. Nov. 10, 2009) (holding that the STAA does not provide a private right of action and instead prescribes the administrative process for remedying violations of the statute); *see also Mattingly v. Heartland Express, Inc., of Iowa*, No. 1:08 CV 169, 2011 WL 886170, at *3 (N.D. Ind. Mar. 14, 2011) ("[T]the plain language of the [STAA] makes the filing of a complaint with the Secretary of Labor, and the Secretary's failure to issue a timely decision, a prerequisite to the complainant's having the right to file an action in district court.").

In sum, if an aggrieved employee wishes to seek a remedy for an alleged unlawful termination in violation of the STAA, he or she must start the legal proceedings by filing a complaint with the Secretary of Labor.  Plaintiff has alleged no facts to indicate that he exhausted his administrative remedies and that § 31105's jurisdictional prerequisites to filing suit in this Court were satisfied.  Accordingly, his STAA claim must be dismissed for lack of subject matter jurisdiction.

B.    Diversity Jurisdiction

In his response to the motion to dismiss, which the Court has liberally construed in light of Johnson's *pro se* status, Johnson argues that the Court has diversity jurisdiction over this action.[3]   Defendants have not responded to his diversity jurisdiction argument.  [*See* Doc. 9.]

The Court cannot tell exactly why Johnson is relying on diversity jurisdiction.  He asserts that the parties are diverse, but he has not alleged the citizenship of any party and, regarding citizenship, has provided only an Indiana business address for each Defendant.  [Doc. 1 at 3.]  Moreover, it is not clear from the complaint, as presently pleaded, whether Johnson is asserting any state law claims about the circumstances surrounding his termination.   Most of the allegations in the complaint are about Defendants' conduct preceding his termination, but he also includes factual allegations about events that occurred after Defendants' allegedly retaliatory decision to terminate him.  For example, he alleges that, after his termination, Defendant Star Freight withheld his paycheck and refused to give him title to his truck, notwithstanding the fact that he "met [his]

_____

[3] Johnson also relied solely on diversity as the basis for the Court's jurisdiction over this action in the civil cover sheet he filed with his complaint.  [*See* Doc. 1-1.]

12

contractual obligation of payment(s)" to Star Freight under a lease-purchase agreement and the truck was "no longer theirs to secure."   At present, the Court cannot conclude that the complaint clearly asserts a claim about those factual allegations, but a more carefully drafted complaint might state a claim.

It is the rule in this Circuit that, where a more carefully drafted complaint might state a claim, a *pro se* plaintiff ***must*** be given at least one chance to amend the complaint before the complaint is dismissed with prejudice,[4] unless the amendment would be futile or the plaintiff expressly declines to amend the complaint. *Woldeab v. DeKalb Cty. Bd. Of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018).   This is true even where the plaintiff does not seek leave to amend his complaint. *Id.*

Bearing that rule in mind, it is **RECOMMENDED** that Johnson be granted leave to amend his complaint to assert his state law claims, provided that all

─────────────────────

[4]To conserve judicial resources, dismissal of the complaint in its entirety without prejudice is an alternative to dismissing the STAA claim for lack of subject matter jurisdiction and allowing Johnson to replead his complaint to clarify his state law claims.  The problem with such a dismissal here is that the basis for Johnson's state law claims is not fully developed, and the Court could only speculate as to what state law applies.  The Court does not know whether statutes of limitation might make a dismissal without prejudice, in effect, a dismissal with prejudice as to some or all of Johnson's claims.

13

Defendants are diverse from Plaintiff and Plaintiff adequately alleges the citizenship of the parties in his amended complaint.

**IV.   Conclusion**

For the foregoing reasons, it is **RECOMMENDED** that Defendants' motion to dismiss [Doc. 4] be **GRANTED**, but that Johnson be granted leave to file an amended complaint asserting his state law claims and alleging the citizenship of all parties to this action.

Because Johnson's Title VII claim was wholly illusory, it appears that this matter should no longer be automatically referred to the undersigned Magistrate Judge under Standing Order 18-01, concerning the Referral and Assignment of Civil Cases and Matters to Magistrate Judges.  The Clerk is therefore **DIRECTED** to terminate the reference to the undersigned.

IT IS SO RECOMMENDED this 26th day of April, 2018.

_____
JOHN K. LARKINS III
United States Magistrate Judge

14